UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
(EASTERN DIVISION)

| | |
|---|---|
| KELLY LEINERT, *et al.*, ) | |
| ) | |
| Plaintiffs. ) | |
| ) | |
| v. ) | Case No. 14-cv-1719 |
| ) | |
| SAINT LOUIS COUNTY, MISSOURI; ) | JURY TRIAL DEMANDED |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' MOTION FOR STAY AND/ OR FOR THIS COURT'S ORDER FOR DEFENDANTS TO SHOW CAUSE AS TO WHY THEY SHOULD NOT BE SANCTIONED FOR ABUSIVE BEHAVIOR AND IMPROPER LITIGATION TACTICS**

Plaintiffs move the Court For a Stay of Proceedings and/or For the Court's Order for Defendants' to Show Cause As to Why Their Recent Behavior, Described Below, should not result in sanctions.

1.     On October 8, 2014, Plaintiffs filed this suit against Defendants (Doc. 1), generally asserting that the St. Louis County police department used excessive force both in employing a S.W.A.T. team to carry out a raid of Plaintiffs' residence, and in the manner in which such raid was performed, which included, *inter alia,* the pointing of semi-automatic rifles at the head and chests of two children home alone.

2.     In particular, the St. Louis County S.W.A.T. team, lead by Sergeant Adam Kavanagh, allegedly victimized the Leinert family in excessive fashion and without adequate reason, abusing their power as commander and members of the S.W.A.T. team.

3.     As the case has been pending, on October 20, 2015, Defendants turned over to Plaintiffs' counsel discovery responses that were deficient in many respects.

4.	Without waiving any privilege, the undersigned suggested to co-counsel, on October 28, 2015, that a Motion to Compel be filed in light of the insufficient response.

5.	Approximately a week later, on November 5, 2015, an extremely startling and ***highly disturbing*** event occurred – primary Defendant Sergeant Adam Kavanaugh, upon information and belief pursuant to an investigation into Plaintiff Kelly Leinert's friend initiated and conducted by Sergeant Adam Kavanaugh himself, **<u>led a SECOND S.W.A.T. raid of Plaintiff Kelly Leinert's house</u>**.

6.	The Defendant S.W.A.T. team members, led by Sergeant Adam Kavanaugh, forcefully raided Ms. Leinert's house and even handcuffed Plaintiff G.L., exacerbating the PTSD symptoms G.L. already had been experiencing.

7.	Needless to say, this experience intimidated and frightened Plaintiffs substantially, as it appears Plaintiffs were directly and purposefully targeted to be victims of a second raid, most likely (owing to Adam Kavanaugh's personal involvement) due to their filing this suit.  In order to protect herself, in fact, Plaintiff Kelly Leinert recently moved residences to a house outside of St. Louis County and, Kelly hopes, Adam Kavanaugh's (legal) jurisdiction.

8.	The undersigned knows this Court realizes the seriousness of a Defendant in a civil lawsuit leading a raid to victimize a family in what appears, for all intents and purposes, done as retaliation for her filing suit for Defendants' exact same actions.  Such behavior truly is abhorrent and has no place in any civilized society, much less within law enforcement agencies who are expected to protect, rather than victimize, citizens.  The undersigned has a hard time imagining a clearer case of a Defendant obviously attempting to intimidate a Plaintiff than has occurred here.

9. In addition to the problems posed by the circumstances related above, there is the fact that, upon information and belief, Sergeant Adam Kavanaugh directed the S.W.A.T. team raiding Ms. Leinert's house to confiscate (again) the Leinert family's electronic devices.

10. In addition, upon information and belief, Sergeant Adam Kavanaugh had conducted electronic surveillance of Plaintiff Kelly Leinert, including, potentially, using wire-taps, in order to continuously monitor Ms. Leinert for an unknown period of time (which she is not even certain has yet ended).

11. Obviously, a large portion of the communication that Defendants have intercepted included a large amount of privileged, attorney-client information and attorney work-product that Defendants unlawfully accessed and reviewed.

12. Such conduct is, in fact, so damaging to Plaintiffs' pursuit of justice in this matter that, pursuant to the facts as understood by Plaintiffs, this Court should consider sanctions including the entry of judgment in favor of Plaintiffs. Most of the damage done by Defendants' improper litigation conduct cannot, by any means, be undone.

13. All that said, in the most bizarre fashion, counsel for Defendants appears to want to pretend that none of the above ever happened.

14. After Ms. Leinert had taken every step she believed possible to protect herself (including moving, replacing counsel, and essentially fleeing the area), counsel for Defendant delivered, after the withdrawal of co-counsel, an e-mail to the undersigned "welom[ing]" the undersigned "back," to the case. This alarmed the undersigned as he had been under the impression that, as per proper procedure, counsel for Defendant was communicating with *all,* rather than select few, of Ms. Leinert's counsel.

15. Oddly, Defense Counsel, Mr. Carl Becker, who openly admitted to this Court that the Leinert's were not be charged with any crime whatsoever pursuant to the first raid, which produced no incriminating evidence, did not even mention Adam Kavanaugh and the S.W.A.T. Team's repetition of the precise behavior for which they were being sued before this Court.

16. In response, the undersigned stated that Plaintiffs', once they had settled from the ordeal, would be moving the Court for a stay and/or other appropriate relief and asked Defense Counsel directly: "Are you NOT aware that your client led a second SWAT-team raid of my client's house?"

17. Defense Counsel completely ignored this query, next contacting the undersigned on December 28, 2015 regarding discovery, and making no mention of the second raid or the undersigneds query.

18. As a result of Defense Counsel's apparent obliviousness to the above-described situation, Plaintiffs are unable to obtain information necessary to determine, *inter alia*: (1) why Adam Kavanaugh was not screened from the investigation of Plaintiffs; (2) to what extent Plaintiffs' attorney-client privilege already has been violated; and (3) what additional claims stem from Defendants' second raid of the Leinert residence that should become part of this lawsuit.

19. In addition, courts have been able to impose sanctions for vexatious and bad faith actions of lawyers and litigants in the exercise of their inherent power to control the proceedings before them. *Roadway Express,* 447 U.S. 752, 765-766 (1980).  That power is reflected also in various provisions of the Federal Rules, such as the provision permitting the court to dismiss an action or enter judgment for failure of the plaintiff or defendant to comply with the rules or orders of the court. Fed.R.Civ.P. 41.

20.     The only way for Plaintiffs and/or this Court to know which course of action is necessary is for Defendants to reveal the details of the November 5, 2015 incident, as well as what controls, if any, were taken to ensure no violations of attorney-client confidentiality occurred.

WHEREFORE, at a minimum, Plaintiffs respectfully request that this Court **STAY** all deadlines in this matter until the-above described issues are resolved; and **ORDER** Defendants' to show cause – by providing additional information regarding the reasons for, details of, and results of, the second raid – why they are not subject to severe sanctions for abusive litigation behavior and party intimidation.

Dated: December 29, 2015                    Respectfully submitted,

                                                           **THE DANIEL HARVATH LAW FIRM, LLC**
By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
P.O. Box 440393
St. Louis, MO 63144
Phone: 1-877-386-7555
Email: dharvath@dhlawfirmllc.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that the above filing was served on the 29th day of December, 2015 upon all counsel of record via the Court's electronic filing system.

December 29, 2015<br>
By: /s/ <i>Daniel F. Harvath</i>